UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE No.:  20-80012-CV-RLR
15-80077-CR-RLR


DAVID CHIDDO,

      Plaintiff,

vs.

UNITED STATES OF AMERICA,

      Defendant.

_____/

**REPORT AND RECOMMENDATION REGARDING MOTION TO VACATE,
SET ASIDE, OR CORRECT SENTENCE [ECF No. 1]**

David Chiddo, represented by counsel, moves to set aside his conviction and sentence because of ineffective assistance of trial counsel, lack of voluntariness, and actual innocence. It is recommended that the motion be DENIED.

Essentially, Mr. Chiddo argues the factual basis presented to the Court in support of his guilty plea proved only an inchoate buyer-seller drug transaction, not a conspiracy to possess with intent to distribute drugs. From that premise, he extrapolates that he was actually innocent of the conspiracy charge to which he pled and that his trial counsel was constitutionally ineffective for allowing him to plead guilty. Separately, he argues that his plea was not knowing and voluntary.

1

## CLAIMS

1.      Trial counsel was constitutionally ineffective because he failed to properly advise Mr. Chiddo that the stipulated facts did not support a plea to conspiracy to possess with intent to distribute a controlled substance, in violation of 21 U.S.C. § 846.

2.      Mr. Chiddo's plea was not knowing and voluntary because he did not understand the elements of the charged offense and did not understand that the stipulated facts failed to support a finding of guilt.

3.      Mr. Chiddo is actually innocent of conspiring to possess with intent to distribute a controlled substance.

## PROCEDURAL HISTORY

On May 19, 2015, a federal grand jury in the Southern District of Florida indicted Mr. Chiddo, for three drug trafficking crimes: (1) conspiracy to possess with intent to distribute cocaine (Count 12 of the Indictment), (2) possession with intent to distribute cocaine (Count 13), (3) and distribution of oxycodone and cocaine (Count 14). ECF No. 5-1 (ECF No. 3 in case no. 15-80077). A Superseding Indictment was returned on July 14, 2015. It added additional defendants to the case but did not change the charges against Mr. Chiddo. ECF No. 5-2 (ECF No. 106 in case no. 15-80077).  On September 11, 2015, Mr. Chiddo entered a plea of guilty to Count 12, pursuant to a written plea agreement (ECF No. 5-3; ECF No. 167 in case no. 15-80077)) and a stipulated statement of facts. ECF No. 5-4 (ECF No. 168 in case no. 15-80077) ("Stipulated Factual Basis"). Magistrate Judge Hopkins conducted the plea

2

colloquy with Mr. Chiddo's consent. ECF No. 5-5 ("Plea Transcript") at 2-3 (ECF No. 309 in case no. 15-80077). Among other terms in the plea agreement, the Government agreed not to file a sentencing enhancement under 18 U.S.C. § 851 and agreed to dismiss the remaining counts against Mr. Chiddo. On December 21, 2015, Mr. Chiddo was sentenced to 151 months imprisonment, followed by 3 years of supervised release. ECF No. 5-11 (ECF No. 246 in case no. 15-80077); *see also* ECF No. 5-10 ("Sentencing Transcript") (ECF No. 305 in case no. 15-80077). The remaining counts were dismissed on the Government's motion. ECF No. 5-11.

A notice of appeal was filed on December 28, 2015. ECF No. 255 in case no. 15-80077. Mr. Chiddo raised two issues on appeal:  (1) Magistrate Judge Hopkins lacked legal authority to conduct the plea hearing and to adjudicate him guilty, and (2) there was no factual basis for a conspiracy conviction and evidence only of "an incipient buyer-seller relationship." ECF No. 5-13 at 11. On July 9, 2018, the Eleventh Circuit Court of Appeals issued its Mandate affirming the movant's judgment and conviction. ECF No. 5-16 (ECF No. 359 in case no. 15-80077). The Court of Appeals did not reach the merits of Mr. Chiddo's claim that there was no factual basis for his plea; it held that any error was invited error, which precluded appellate review of the claim. *Id.* at 12. On January 8, 2019, the conviction became final when the U.S. Supreme Court denied the petition for writ of certiorari. ECF No. 5-17 (ECF No. 361 in case no. 15-80077). On January 6, 2020, Mr. Chiddo timely filed this Motion to Vacate his

sentence. 28 U.S.C. § 2255(f)(1).[1]

## FACTUAL BASIS FOR PLEA

In the Stipulated Factual Basis, ECF No. 168 at 7-10, the parties agreed that the following facts were true and correct:

1. From in or around January 1, 2012, the exact date being unknown to the Grand Jury, through on or about October 15, 2014, in Palm Beach County, in the Southern District of Florida, and elsewhere the defendant was a member of a drug trafficking organization together with co-defendant, MARVIN LESTER, III, and others. This drug trafficking organization operated in Palm Beach County within the Southern District of Florida and elsewhere including California and Mexico.

2. The defendant admits that he agreed, combined, conspired and confederated with the co-defendants in the above-captioned matter for the purpose of possessing with the intent to distribute less than five hundred (500) grams of cocaine, a controlled substance, in violation of Title 21, United States Code, Sections 841(a)(l), 841(b)(l)(C); all in violation of Title 21, United States Code, Section 846, and Title 18, United States Code, Section 2.

3. The elements of the offense described above are as follows: (1) two or more people in some way agreed to try to accomplish a shared

---

[1] The Government concedes that the Motion to Vacate is timely. ECF No. 5 at 7.

and unlawful plan to possess with intent to distribute a controlled substance, namely a mixture or substance containing a detectable amount of cocaine;

(2) the Defendant, knew the unlawful purpose of the plan and willfully joined in it; and

(3) the object of the unlawful plan was to possess with the intent to distribute less than five hundred grams of a controlled substance, namely a mixture or substance containing a detectable amount of cocaine.

To "distribute" a controlled substance means to deliver possession of a controlled substance to someone else, even if nothing of value is exchanged.

A "conspiracy" is an agreement by two or more persons to commit an unlawful act.

A person may be a conspirator even without knowing all of the details of the unlawful plan or the names and identities of all the other co-conspirators.

4.      During May 2012, law enforcement was actively engaged in a narcotics investigation involving MARVIN LESTER, DAVID CHIDDO, and others. During this investigation DEA utilized the services of 3 confidential informants to conduct a number of controlled purchases of heroin from MARVIN LESTER. On May 4, 2012, law enforcement obtained a judicially-authorized wiretap to intercept wire communications on (561) 715-1653, utilized by Marvin Lester (hereafter target telephone 1, "TTl ").

5.      In late May, 2012, pursuant to the lawful wiretap (TTl), law enforcement recorded a number of telephone communications

5

between MARVIN LESTER and DAVID CHIDDO. During one of these communications LESTER told CHIDDO that he needed, "some", and asked for CHIDDO'S location. CHIDDO asked LESTER what he needed and LESTER replied, "a ball", which is common street terminology for 1/8 ounce of narcotics, and most frequently used when referring to cocaine. CHIDDO stated that he had been waiting for LESTER. Before finishing the telephone call LESTER asked CHIDDO to hold it for him and CHIDDO agreed.

6. In June 2012, agents lawfully intercepted a series of telephone calls on (561) 907-9122 (hereafter target telephone 2, "TT2"), which was used by MARVIN LESTER. During these interceptions, LESTER spoke with CHIDDO and asked if he was good, to which CHIDDO replied he was. CHIDDO advised that the price was eleven, which was believed to be $1,100. LESTER complained about the price but agreed. CHIODO told LESTER that the price he stated was what he (CHIDDO) had paid. CHIDDO and LESTER then negotiated a meeting place to conduct the transaction and the telephone call ended. Several minutes later LESTER utilized target telephone 2 to place a telephone call and speak with CHIDDO. LESTER stated that he did not want any problems and CHIDDO advised that it was powdery, but fine. LESTER and CHIDDO then continued to negotiate a location where the transaction could be conducted.

6

7.     In late June, 2012, during another recorded telephone call occurring on target telephone 2, law enforcement learned of another impending narcotics transaction between CHIDDO and LESTER. During this conversation LESTER told CHIDDO to, "Save my shit nigga." CHIDDO responded that LESTER had better tighten up then, and that he (CHIDDO) had re-ups also. LESTER asked that CHIODO put his to the side, which was believed to be a reference to holding the narcotics for LESTER and not selling it during CHIDDO'S other re-ups of customers and/or distributors. CHIDDO agreed and told LESTER to come and meet him. As a result of this intercepted telephone call law enforcement established surveillance on CHIDDO. The surveillance was continued as CHIDDO departed from 433 46th Street, West Palm Beach, Florida, and traveled to a Kentucky Fried Chicken located in the 4700 block of Broadway Avenue, West Palm Beach, Florida. While CHIDDO was present at the Kentucky Fried Chicken, law enforcement observed him conduct a hand to hand transaction with the occupants of a blue Chevrolet vehicle, bearing Florida tag B919AC. Law enforcement subsequently followed the blue Chevrolet and conducted a traffic stop of the vehicle. A search of the vehicle revealed approximately 3.6 grams of cocaine and 14, 40 milligram Oxycodone pills. One of the occupants of the vehicle admitted that the illegal narcotics were purchased from a subject known only as, "D-Money", a known alias for

DAVID CHIDDO.

> The defendant admits the facts described above satisfy and
> support a finding that the elements of the offense have been provided
> and support a factual basis for the entry of his plea of guilty to Count
> Twelve (12) of the pending Superseding Indictment.

Stipulated Factual Basis at 1-4. At his guilty plea, Mr. Chiddo swore that he had read and discussed the stipulated factual basis with his attorney before signing it. Plea Transcript at 9. He also swore that he understood the factual basis, and that the statements in the written factual basis were true and correct. *Id.*

During the plea colloquy on September 11, 2015, Mr. Chiddo explained that his wife and daughter had been murdered only two and half months earlier and that he had received mental health treatment for that trauma. Plea Transcript at 3. Trial counsel told the Court that there had not been any difficulty communicating with Mr. Chiddo. After questioning and observing Mr. Chiddo, the Court found him "fully competent and capable of entering an informed plea" and further found that the plea was "knowing and voluntary." *Id.* at 10.

## DISCUSSION

To establish a claim of ineffective assistance of counsel, movant must show that his attorney's performance was deficient and that the deficient performance prejudiced his defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To prove deficiency, he must show that his attorney's performance "fell below an objective standard of reasonableness" as measured by prevailing professional norms. *Id.* at

8

688. Courts must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. To prove prejudice, movant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. A reasonable probability is "a probability sufficient to undermine confidence in the outcome." *Id.* The movant has the burden of proof on an ineffectiveness claim, *Holsey v. Warden*, 694 F.3d 1230, 1256 (11th Cir. 2012), as well as the burden of proof under § 2255, *Beeman v. United States*, 871 F.3d 1215, 1222 (11th Cir. 2017) (citing cases).

Mr. Chiddo's motion primarily rests on the premise that there was not a sufficient factual basis for his guilty plea. Because that determination resolves other derivative arguments, I address the core issue first.

A. *There was a sufficient factual basis for the plea*

Federal Rule of Criminal Procedure 11(b)(3) instructs, "Before entering judgment on a guilty plea, the court must determine that there is a factual basis for the plea."

> The standard for evaluating challenges to the factual basis for a guilty plea is whether the trial court was presented with evidence from which it could reasonably find that the defendant was guilty." There is no requirement that there be "uncontroverted evidence" of guilt. The purpose of the Rule 11 requirement that a district court conduct a sufficient inquiry into the factual basis for the plea is "to protect a defendant who mistakenly believes that his conduct constitutes the criminal offense to which he is pleading.

*United States v. Lynch*, 595 Fed. Appx. 943, 945 (11th Cir. 2014) (citations omitted).

The factual basis for a plea can be based on both direct and circumstantial evidence.

9

A drug conspiracy in violation of 21 U.S.C. § 846 exists if the defendant agreed to possess with intent to distribute a generic controlled substance. *United States v. Achey,* 943 F.3d 909, 913-14 (11th Cir. 2019). Where, as here, the Indictment references the kind of drug only for sentencing purposes, evidence of an agreement to possess with intent to distribute the particular kind of drug is not required. *Id.* at 915-16.

Mr. Chiddo argues that the factual basis failed to show that he participated in a drug conspiracy, rather than merely engaging in a buyer-seller transaction. I disagree. As the Eleventh Circuit explained in *Achey,*

> But a simple buyer-seller controlled substance transaction does not, by itself, form a conspiracy. *United States v. Dekle*, 165 F.3d 826, 829 (11th Cir. 1999). Yet a conspiracy can be found if the evidence allows an inference that the buyer and seller knew the drugs were for distribution instead of merely understanding "their transactions to do no more than support the buyer's personal drug habit." *Id.* at 829–30. When considering whether a purchaser or seller of drugs was in fact a conspirator, an "agreement may be inferred when the evidence shows a continuing relationship that results in the repeated transfer of illegal drugs to the purchaser." *United States v. Mercer*, 165 F.3d 1331, 1335 (11th Cir. 1999).
>
> A conspiracy to distribute controlled substances may also be inferred from a drug transaction where the amount of drugs allows an inference of a conspiracy to distribute drugs. *United States v. Hernandez*, 433 F.3d 1328, 1333 (11th Cir. 2005).

943 F.3d at 917 (11th Cir. 2019).

The facts proffered by the Government, and agreed to by Mr. Chiddo, were sufficient for the Court to reasonably find that Mr. Chiddo participated in a

conspiracy to possess with intent to distribute a controlled substance.[2] Within a two-month period, Mr. Chiddo and Mr. Lester conducted three separate controlled substance transactions. A court-authorized wiretap intercepted Mr. Chiddo multiple times in May 2012 talking to a person (Mr. Lester) who was dealing controlled substances. During one of those conversations, Mr. Chiddo agreed to sell Mr. Lester 1/8 ounce of a controlled substance (cocaine). During that call, Mr. Chiddo said he had been waiting for Mr. Lester; Mr. Chiddo also agreed to hold the controlled substance for Mr. Lester. In June 2012, Mr. Lester and Mr. Chiddo had conversations about a separate controlled substance transaction.[3] Later in June 2012, Mr. Chiddo and Mr. Lester negotiated and completed a sale of controlled substances (oxycodone).

There is no indication that these multiple transactions in a relatively short period of time were solely to support Mr. Chiddo's personal drug habit. Moreover, they related to different kinds of drugs. These facts demonstrate a continuing relationship for the purpose of repeatedly transferring more than one kind of illegal drug. As such, there is a reasonable inference that Mr. Chiddo and Mr. Lester were co-conspirators, not a mere buyer and seller.

Given that there was an adequate factual basis, I reject Mr. Chiddo's claim that his trial counsel was constitutionally ineffective for allowing him to proceed with

---

[2]   I agree with Mr. Chiddo that paragraph 2 of the Stipulated Factual Proffer is a purely legal conclusion that should not be considered in assessing the factual basis for the plea.

[3] In light of the reference to the drugs being powdery but fine, it is reasonable to infer that it was cocaine or heroin, not oxycodone.

the plea. Mr. Chiddo asserts that his lawyer did not properly advise him about the lack of a sufficient factual basis and whether he had meritorious defenses. Specifically, he alleges that counsel failed to (1) inform him of the elements of the offense to which he was pleading guilty, including that a mere buyer-seller transaction is not sufficient to establish a drug conspiracy, (2) advise him that the stipulated facts did not establish the necessary elements of a conspiracy charge, and (3) discuss "the implications of the factual basis on [Mr.] Chiddo's actual innocence of the offense." ECF No. 1 at 17.

Even assuming trial counsel fell short under the first *Strickland* prong, Mr. Chiddo has not met his burden of showing prejudice – specifically he has not shown that there is a reasonable probability that he would not have pled guilty had he known that he could assert a "mere buyer-seller" defense. *See e.g.*, *Hill v. Lockhart*, 474 U.S. 52 (1985) (holding the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial). Although Mr. Chiddo summarily assets that "but for counsel's misadvice" he would have proceeded to trial, ECF No. 1 at 18, he has not provided any evidence to support that conclusion. *See Tejada v. Dugger,* 941 F.2d 1551, 1559 (11th Cir. 1991). Rather, the circumstantial evidence demonstrates that Mr. Chiddo pled guilty because he concluded it would be his best way to mitigate a sentence.

Distilled down, Mr. Chiddo's argument is that he was guilty of Count 13 (which charged him with possession with intent to distribute cocaine on May 23, 2012) but

not guilty of Count 12 (which charged him with conspiring to possess with intent to distribute cocaine between January 1, 2012, and October 15, 2014). The facts showed that Mr. Chiddo sold cocaine and oxycodone on May 23, 2012. The evidence of this transaction was overwhelming. In addition, Mr. Chiddo had been intercepted multiple times on wiretaps discussing drug transactions with Mr. Lester. If the Government had filed a § 851 enhancement and Mr. Chiddo had been convicted at trial, his Sentencing Guideline range would have been 262-327 months.[4] Based on the Government's agreement not to file the § 851 enhancement and a Guidelines reduction for acceptance of responsibility, Mr. Chiddo's Sentencing Guidelines range was 151-188 months. U.S.S.G. Sentencing Table (2015).[5] Moreover, Mr. Chiddo was attempting to cooperate with the Government in return for sentencing leniency. ECF No. 5-9 (ECF No. 235 in case no. 15-80077); Sentencing Transcript at 42. All of these factors belie his claim that he would have gone to trial if he had been better advised.

---

[4] This range reflects a base offense level of 34 and a criminal history category VI under U.S.S.G. § 4B1.1.

[5] The Government's Response notes other investigative evidence that the Government argues would have exposed Mr. Chiddo to a mandatory minimum sentence and a potential life sentence. ECF No. 5 at 15-18. The Government also proffers that Mr. Chiddo made incriminating admissions in statements to investigators. None of this evidence is supported by sworn declaration or other direct evidence, so I do not consider it.

Case 9:20-cv-80012-RLR   Document 9   Entered on FLSD Docket 07/21/2021   Page 14 of 18

B. *Mr. Chiddo's plea was knowing and voluntary*

Mr. Chiddo has not met his burden of showing that he did not understand the elements of the offense of conviction.[6] The Stipulated Factual Basis accurately listed the elements of a federal drug conspiracy. ECF No. 5-4 ¶3. It conformed to the Eleventh Circuit's pattern jury instruction for that offense. This pattern instruction adequately incorporates the "mere buyer-seller" defense. *See, e.g., United States v. Lively,* 803 F.2d 1124, 1128-29 (11th Cir. 1986). Mr. Chiddo swore that he had reviewed the Stipulated Factual Basis with counsel and that he understood it. Plea Transcript at 9.

Although not explicit, it appears that Mr. Chiddo is also arguing that trial counsel was constitutionally ineffective for allowing Mr. Chiddo to proceed with the plea despite the recent death of his wife and child. Mr. Chiddo argues that he was in an extreme emotional state at the time of his plea because his wife and child had recently been murdered. ECF No. 1 at 16, 21-22. He says, "The unspeakable tragedy suffered by movant Chiddo prior to the plea contributed immeasurably to his compliance with counsel and at the plea colloquy." *Id.* at 22. He argues that his emotional state made his plea involuntary: "Chiddo was an emotional wreck at the

---

[6] Arguably, this claim is procedural barred because it could have been raised on direct appeal but was not. However, the Government has not opposed the claim on these grounds, so the procedural bar argument is waived. *Foster v. United States*, 996 F.3d 1100, 1106 (11th Cir. 2021). The Government's response discusses the procedural bar in its general legal discussion, but does not directly assert that Mr. Chiddo's claim here is procedurally barred. *See* ECF No. 5 at 9.

time of the plea. He felt overwhelming guilt that his partner and their child had been murdered while he was incarcerated. He blamed himself and was susceptible to any influence pushing him to admit guilt and be punished." *Id.* at 24.

These factual statements about Mr. Chiddo's mental state are not supported by a sworn declaration or other direct evidence. Mr. Chiddo signed the motion to vacate, but it is not verified. Even if I did consider these statements as evidence, however, I would reject it because it directly contradicts the plea colloquy. Before accepting the plea, the Court was aware of the tragic events that had occurred several months earlier, and was aware that Mr. Chiddo had received mental health treatment. With that knowledge, and after confirming that trial counsel was able to communicate with Mr. Chiddo and observing Mr. Chiddo, the Court found him to be competent and found his plea to be knowing and voluntary.

C. *Mr. Chiddo is not actually innocent*

Finally, Mr. Chiddo is not entitled to relief based on actual innocence. "Actual innocence is not itself a substantive claim, but rather serves only to lift the procedural bar" to a court considering the merits of a § 2255 motion. *United States v. Montano,* 398 F.3d 1276, 1284 (11th Cir. 2005). Here, no procedural bar has been invoked.

In any event, Mr. Chiddo is not actually innocent. "To establish actual innocence, [the] petitioner must demonstrate that, in light of all the evidence, it is more likely than not that no reasonable juror would have convicted him." *Bousley v. United States*, 523 U.S. 614, 623 (1998) (internal quotation marks and citation omitted) *cited in Granda v. United States*, 990 F.3d 1272, 1292 (11th Cir. 2021)

(brackets in original). "In cases where the Government has forgone more serious charges in the course of plea bargaining, petitioner's showing of actual innocence must also extend to those charges." *Bousley*, 523 U.S. at 624.

Mr. Chiddo has not met this burden. The same evidence that makes the factual proffer sufficient to support a guilty plea also would easily permit a reasonable juror to convict Mr. Chiddo of a drug conspiracy.

## EVIDENTIARY HEARING

Mr. Chiddo has the burden of establishing the need for an evidentiary hearing, and he would only be entitled to a hearing if his allegations, if proved, would establish his right to collateral relief. *See Diveroli v. United States*, 803 F.3d 1258, 1263 (11th Cir. 2015). However, district courts "need not hold a hearing if the allegations are 'patently frivolous,' based upon 'unsupported generalizations,' or 'affirmatively contradicted by the record.'" *Diveroli*, 803 F.3d at 1263 (relying upon *Winthrop-Redin v. United States*, 767 F.3d 1210, 1216 (11th Cir. 2014)). *Cf. Schriro v. Landrigan*, 550 U.S. 465, 473-75 (2007) (holding that if the record refutes the factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing in a § 2254 context).

Here, an evidentiary hearing is not warranted because Mr. Chiddo is not entitled to relief on his first and third claims as a matter of law because the factual basis was legally sufficient and because actual innocence is not a basis for relief on the merits. On his second claim, his assertion that his plea was not knowing and voluntarily is based only on unsupported generalizations and is affirmatively

16

contradicted by the record. Thus, an evidentiary hearing should be denied.

## CERTIFICATE OF APPEALABILITY

A prisoner seeking to appeal a district court's final order denying his motion to vacate has no absolute entitlement to appeal, but must obtain a certificate of appealability ("COA"). *See* 28 U.S.C. § 2253 (c)(1); *Harbison v. Bell*, 556 U.S. 180, 183 (2009). This Court should issue a certificate of appealability only if the prisoner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. §2253 (c)(2). To merit a certificate of appealability, prisoners must show that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. *See Slack v. McDaniel*, 529 U.S. 473, 484 (2000). *See also Eagle v. Linahan*, 279 F.3d 926, 935-36 (11th Cir. 2001).

In this case, there is no basis to issue a certificate of appealability.

## RECOMMENDATION

Based on the foregoing, **IT IS RECOMMENDED** that the motion to vacate be **DENIED**. [ECF 1]. In addition, an evidentiary hearing should be **DENIED**, and this Court should **NOT ISSUE** a certificate of appealability. Accordingly, this case should be **CLOSED**.

## NOTICE OF RIGHT TO OBJECT

A party shall serve and file written objections, if any, to this Report and Recommendation with the Honorable Robin L. Rosenberg, United States District Court Judge for the Southern District of Florida, within **FOURTEEN (14) DAYS** of

being served with a copy of this Report and Recommendation. Failure to timely file objections shall constitute a waiver of a party's "right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions." 11th Cir. R. 3-1 (2016).

If counsel do not intend to file objections, they shall file a notice advising the District Court within FIVE DAYS of this Report and Recommendation.

**DONE and SUBMITTED** in Chambers at West Palm Beach, Palm Beach County, in the Southern District of Florida, this 21th day of July 2021.

_____

BRUCE E. REINHART
UNITED STATES MAGISTRATE JUDGE

18